Hyman Barshay, J.
The Second Additional March 1958 Grand Jury, in the course of a John Doe investigation to ascertain whether or not employees of the Building Department of the City of New York have committed the crimes of bribery, extortion and conspiracy in Kings County, issued a subpoena to George Edward Sillifant, an Inspector of Plastering employed in the Brooklyn office in that department, requiring his appearance before it on February 10,1959. He appeared and executed a limited waiver of immunity as provided for in section 903 of the New York City Charter. After being duly sworn, he was given a financial questionnaire consisting of four pages and was directed to supply written answers to the questions away from the Grand Jury room and at a later date to return to the Grand Jury and to be further questioned about the written answers made by him.
The witness accepted the questionnaire, left the Grand Jury room, consulted with his counsel, returned to the Grand Jury room and, acting upon the advice of his counsel, refused to comply with the direction of the Grand Jury on the ground that it was without legal authority to compel him to perform any act outside of the Grand Jury room.
In compliance with the direction of the Grand Jury, the District Attorney applied for an order from this court directing George Edward Sillifant to make written answers to the financial questionnaire and to return with it at a later date for further examination.
I held a hearing in the presence of the District Attorney, the witness and his counsel, at which all of the aforesaid facts were established. The questionnaire was marked in evidence and is attached, as Exhibit “ A ”, to this opinion.
The Grand Jury can receive none but legal evidence (Code Crim. Pro., § 249). The questions contained in the question *737 naire are legal, competent, relevant and material to the inquiry being conducted. A witness who would refuse to orally answer them in the Grand Jury would subject himself to criminal contempt (Judiciary Law, § 750, subd. A, par. 5; Code Crim. Pro., § 619).
The question to be determined is, did the Grand Jury have the power to direct this witness to make written answers to the questions contained in the financial questionnaire away from the Grand Jury room and submit it at a subsequent session and be further examined thereon? This question was of first impression in the State of New York until Matter of Cole (Reiss) (208 Misc. 697) was decided in August of 1955, holding that ¿he Grand Jury had no power to compel the witnesses to answer that questionnaire outside of the Grand Jury room. Counsel for the witness, herein, seek to sustain his position on the authority of that case. That decision was not appealable. Research fails to disclose any appellate court decision in the State of New York on the identical question.
In Matter of Cole (Reiss) (supra) a New York County Grand Jury was conducting an investigation to determine whether certain public officers employed by the New York State Liquor Authority conspired to receive, or had received, bribes for the improper performance of their duties. Each of the employees of the New York State Liquor Authority appeared before the Grand Jury, executed waivers, was sworn as a witness and given a questionnaire with the direction to each to make written answers away from the Grand Jury room and return with it at a later date. It is important to note that the questionnaire before the court in that case, by the District Attorney’s own admission (p. 701), was “ a very complicated one ”, one where the answers required ‘ ‘ are numerous, complicated and very difficult to commit to memory, thus making it virtually impossible for the witness to attain a reasonable degree of accuracy in reporting to the Grand Jury the ascertained facts without writing them as he established them.” The court itself in describing the questionnaire said (pp. 701-702), “ It might be helpful to state that the questionnaire consists of twenty-six pages, each longer than the usual legal foolscap, and containing sixty-eight questions, with many of these questions having a great number of subdivisions and some of these subdivisions themselves again subdivided, and they cover not only the activities of the witness, but of his wife, children or other dependents over a period of six years. The court thinks it is fair to state that, conceivably, some people would find it difficult indeed to furnish the answers to the questions without outside assistance of a professional *738 nature, such as accountants, depending, of course, upon the particular activities in which the witness has engaged in the six years covered by the questionnaire. ’ ’
The instant questionnaire is vastly different from the one concerned in Matter of Cole (Reiss) (supra). It is fair to assume that based upon that decision, the District Attorney in this matter, conceived this simple questionnaire which can be answered in a reasonable time without any professional help or advice and without any undue hardship. The District Attorney has stated that he intends to inquire into the finances of approximately 300 employees of the Building Department. I can readily imagine the difficulties that would beset the Grand Jury, in so huge a project if it did not adopt this convenient method of obtaining the required information of the employees of that department. The inquiry would be prolonged, and hampered and would become ineffective. If the administration of justice can be streamlined without impairing or invading the fundamental rights guaranteed to all by law, the courts should permit it to be done. Each case must be decided on its own facts.
The formation, functions, powers and limitations of a Grand Jury are governed by sections 223-272 of the Code of Criminal Procedure. I find in none of them any restraint upon the procedure adopted by the Grand Jury in this matter.
For the reasons aforesaid, I answer the question posed in the affirmative, and accordingly direct George Edward Sillifant to make written answers to the questions contained in the questionnaire given him in the Grand Jury on February 10, 1959 and to submit it to the Grand Jury at 2:00 p.m. of this day and submit himself to further examination.
Submit order.